# Findings of Fact and Decision

# Case # 15473

# East Ramapo School District and Mr. and Mrs. A.

**Richard Thaler, Hearing Officer**
**2154 Marion Avenue**
*Merrick, NY 11566*
Tel. 516-378-4436
Fax. 516-379-1737
E-mail DickThaler@aol.com

## PRELIMINARY STATEMENT

In the matter of East Ramapo CSD and Mr. and Mrs. A, the school district was represented by Carl Wanderman, Esq. and the parent petitioners were represented by Gary Mayerson, Esq. The East Ramapo CSD received the parents' request for a hearing dated July 29, 2005 and I received a call from the school district on Aug. 5, 2005 questioning my availability to serve as hearing officer. I accepted, sent in my Statement of Schedule Availability form and was appointed. The hearing that was scheduled for Sept 29, 2005 was cancelled at the request of both attorneys because a resolution meeting was held. It ended with unresolved issues and the first hearing was held on Sept 30, 2005. Exactly one year later, after 2,589 pages of testimony ,240 pages of evidence, and eleven (11) witnesses, , the record closed after the twelfth (12) hearing on September 29, 2006. Two witnesses testified for the East Ramapo CSD and nine witnesses appeared for the parent petitioners.

Mr. Wanderman in his Memorandum of Law states on Page 10 that "the burden of persuasion in an administrative hearing challenging an IEP is on the party seeking relief (Schaffer v. Weast (126 S. Ct. 528,537 [2005]." The matter of East Ramapo CSD and Mr. and Mrs. A. was initiated prior to the Supreme Court Decision.

## ISSUES

### Classification

The issue of this hearing at the start was parents' difference with the recommendation by the CSE of East Ramapo CSD concerning the classification of their son, MA, age five years, one month  The CSE classified MA as Other Health Impaired (OHI) and the parent petitioners' stated that their son's classification should be Autistic.  To add to the discrepancy, on the IEP 2005-2006, under "Comments" it states: MA had been previously diagnosed by a neurologist as having Pervasive Developmental Disorder. (SD 4, page 5 of 10).  However on the title page under "Classification", MA is listed as Other Health Impaired (OHI).  Following the presentations by Mr. Mayerson and Mr. Wanderman, Mr. Wanderman stated there was no objection to changing the classification to Autistic.  Mr. Wanderman read into the record the CSE's reasons why it preferred OHI as the classification and stipulated that he would now accept the Autism classification. He requested a ruling from the hearing officer.  I ruled that student MA is now classified as Autistic.

### Compliance/Interfering Behaviors

Petitioners state that MA exhibited interfering behaviors and compliance issues and that the school district did not administer a Functional Behavioral Assessment (FBA) or a Behavior Intervention Plan (BIP) while preparing the IEP.  The goals and objectives were written without having the results of an FBA or BIP.

In his cross examination of Dr. Amy Albers, Chairperson of the CSE, Mr. Mayerson asked why MA did not have a Behavior Intervention Plan (BIP) or Functional Behavior Assessment (FBA) since he had interfering behaviors, self-stimulating behavior and had compliance issues.  Dr. Albers responded "he's in a program that is a program that is analyzing and responding to behavior throughout the day.   That is what the program is designed to do" (Tr.  250, 251)

But, by the end of the school year, the need for a BIP and FBA became obvious to the classroom teacher.  In her Annual Review dated 5/20/06, classroom teacher Mrs. Brusco wrote: "MA exhibits periods of non-compliant behaviors." "…MA needs to comply to all adults within his school environment.  At times, he demonstrates non-compliant behaviors to staff requests other than the teacher "(Pet DDD).

## Speech Language Therapy

The East Ramapo CSE was aware of MA's speech deficits and recommended 1:1, 3X weekly for thirty minutes plus language instruction 5:1, 2X weekly in the classroom. Duration not listed.  Parents are requesting one to one direct speech-language therapy five times a week at one hour per session.

In a Speech and Language Annual Review, dated 3/29/05, when MA was in pre-school, Adele Rapp, T.S.H.H and supervised by Gitty Braunfeld MA, CCC-SLP, Speech and Language Pathologist, wrote, "Overall results on the expressive language sub-tests indicate impaired expressive language skills." (SD17)

Dr. Steven Blaustein is a private Speech and Language Voice Pathologist who was retained by the parents to evaluate MA.  In Dr. Blaustein's Speech and Language Evaluation of MA on 4/12/05 and 5/3/05 he made the following statement

"Coupled with MA's marked language and pragmatic difficulties, the need for an intensive program is apparent.  MA should be seen for five one hour sessions of individual speech and language therapy per week". (SD 14) (Pet. D).

This evaluation was shared at a joint meeting with CPSE and CSE members.

During cross examination by Mr. Mayerson, Marlene Slackman, the Chairperson of the CPSE testified that the CPSE became aware of MA's stuttering at the end of the year. Mrs. Slackman was called to testify because her role was to chair the CPSE that was transitioning MA to Kindergarten.

Q. Didn't somebody tell us last time we were here the dysfluency grew during the 04-05?

A  We became aware of it at the end of the year as he used more language.  And that was why we changed to two individual speech therapy to address the dysfluency issue.

Q  Now I know that you say you did it to prevent regression.  But whereas here by the own testimony of the district the regression has already occurred during the entirety of the year, don't you have to do more than simply prevent further regression?

A  No, that's what the law mandates and we did try to prevent regression by changing to two individual speech therapy sessions.  (Tr 351,352)

Mr. Mayerson also discussed Dr. Blaustein's recommendations which the CPSE and the CSE both reviewed and used during the development of the IEP's. Mr. Mayerson reminded Mrs. Slackman that Dr. Blaustein recommended five hours of one to one weekly.

Q    .....do you think it is meaningful to respond to that with two 30 minute sessions of one to one?

A  We were preventing regression of skills. We weren't remediating at that point..... . (Tr. 351,352)

## Dysfluency (stuttering)

MA's mother reported that MA began stuttering in Pre School.  Ms. Rapp testified that she spoke with her supervisor about MA's stuttering and they decided that since he was young, it was best not to call attention to the problem: " ...by calling attention to the problem it was just going to increase the problem" (Tr 708).

In his report, Dr. Blaustein stated, "While overall intelligibility of speech is fair, with phonological development age appropriate, a severe pattern of speech dysfluency (stuttering) is observed.  MA demonstrated initial and syllable repetitions, whole word repetitions and secondary patterns of dysfluency": (SD 14)  (Pet. D.)

Mrs. A. sought out the services of Karin Wexler, Ph.D. in Speech and Language pathology with specialization in stuttering.  She was reported to be a stuttering expert by East Ramapo School Speech/Language therapist, Maria Russo.

In his direct examination of Mrs. A, Mr. Mayerson asked:

Q: Now, how did you get to Dr. Wexler?

A: It was through a couple of people.  One was Maria Russo, the speech pathologist. (at MA's school).  One was at a CPSE meeting for my son, my other son, not MA.

Where at the end of the meeting Mrs. Shleppin (phonetic) had said well, how is MA doing on his stuttering? And I said he's not doing well. So then it was her and the speech pathologist that attended the meeting that suggested that I call Karin Wexler.

Q: Now, are you saying that at the CPSE that East Ramapo personnel recommended or mentioned Miss Wexler?

A: CPSE, yes.

Q: But I am saying CPSE? This is East Ramapo people?

A: Yes, yes. (Tr 1890)

Dr. Karin Wexler was called to testify by Mr. Mayerson. She is an expert in stuttering and is currently working after school hours with MA. She described her educational background and experience. Dr. Wexler has a PhD in speech and language pathology from Columbia University with specialization in stuttering. She said she is a Board recognized stuttering specialist and a board recognized mentor for future stuttering specialists. She stated she devotes her entire professional life to helping children and adults who stutter. Dr. Wexler has been teaching courses in stuttering and stuttering therapy to graduate students in speech and language pathology at Columbia University since 1978. She has been published in the field of stuttering or fluency. Dr. Wexler also stated that she is experienced working with children who are on the Autism spectrum and has done so since 1971.

Mr. Mayerson asked the Hearing Officer to have Dr. Wexler declared an expert witness. I agreed. He asked Mr. Wanderman: "You don't have any problem with that, do you?"

Mr. Wanderman: " No" (Tr 1763).

When questioning Dr. Wexler, Mr. Mayerson asks:

Q: Do you have any understanding as to who Miss Russo is in connection with MA and what if anything, she does with him or for him?

A. I know that she works with him as speech pathologist in the school and is, you know, a general practitioner and cannot be expected to perform a specialty service without having the special qualifications.

Q: Do you think that Miss Russo cares about MA?

A: Absolutely.

Q Do you believe that she is calling you because she is trying to get him services that he needs?

A: Yes (Tr 1782-1783)

Q: Did Miss Russo ever tell you why she referred you to Mrs. A. for MA?

A: Because, clearly because of my stuttering specialization and my reputation in East Ramapo, among the speech and language pathologists. (Tr 1784)

While Ms. Russo is not a stuttering expert she did identify the problem as per a Speech – Language Evaluation administered by her on 3/7/06. She reported that MA presents with moderate dysfluent speech patterns that is primarily characterized with the repetitions of initial sounds of words. He is sometimes aware of his "bumpy" speech patterns. ...delays that are primarily characterized by perseverative verbalizations interfere with goal attainment during therapy sessions. ( Pet DDD)

With regard to Mrs. A's initial identification of MA's stuttering in preschool and Ms. Rapp's supervisor recommendation that by calling attention to the problem it was just going to increase the problem, Dr. Wexler stated: "That's the worst mistake that can be made for anyone that stutters" (Tr 1778, 1779).

With regard to, Chairperson of the CSE, Dr. Albers' testimony that "I would not characterize MA's stutter as being pronounced and profound" (Tr420), Dr. Wexler strongly disagreed in her response to a question posed by Mr. Mayerson:

Q: In terms of his speech and language development is there any bigger issue, in your mind, than his stuttering and dysfluency?

A: None. Or rather no, it's by far the biggest.

Q. To the extent that somebody would take the position that what MA has is quote not a true stutter, is it in your mind a true stutter or is it not a true stutter?

A. It's a true stutter, without any doubt. (Tr 1819)

Dr. Wexler routinely consults with school districts and treats public school students in her private office. In a response to a question from Mr. Wanderman who asked if public school systems have paid her to provide therapy in her office, she responded, "Yes and currently are". He also asked if Dr. Wexler would tell him which school districts and she replied, "Sure, West Point School District, West Point Elementary School and West Point Middle School and Highland Falls School District. Highland Falls is ongoing now."

Mr. Wanderman continued,

Q: Now, so I understand, these experiences in West Point are situations where you've testified that a school district is paying for a child to receive one on one therapy by you in your office?

A: One—Yes—one to one therapy by me in my office One hour sessions (Tr 1827,1828, 1829)

Dr. Wexler testified that she is currently seeing MA, three times weekly, after school, for forty-five minute sessions at $150 per session. (Tr 1798). Typically, her hourly rate is $200 and is based on her time but Mrs. A, said she was not able to afford the full hourly rate. The highlights of Dr. Wexler's initial evaluation and observation of MA were described as averting eye contact which is classic for stuttering and PDD, speech struggle and speech avoidance. (Tr 1792). Dr. Wexler also testified that there is never a struggle to work with MA for the 45 minute sessions. He does not cry or tantrum and creates no problems in maintaining his attention. He smiles and makes eye contact and does not want to leave at the end of sessions ( Tr 1812, 1813)

## Extended School Day

Parents requested that the CSE recommend an extended school day. Specifically, they requested ten hours per week of Applied Behavioral Analysis (ABA) therapy at home, after full day of ABA therapy in school. The CSE recommended an extended school year but denied an extended school day. The parents enlisted the professional services of ABA therapists from TheraCare, a private agency to provide MA with ABA at home. Two of the TheraCare therapists testified, Dawn Sanchez, Supervisor and Christina Hauser. Two other therapists, Taro and Renee were also employed by Mrs. A to work with MA. Taro worked on weekends. Also, one independent ABA therapist, Kristina Young was employed by Mrs. A and she testified.

Ms. Sanchez testified under direct examination by Mr. Mayerson that she observed for approximately one hour, MA receiving discrete trials of ABA in Mrs. Brusco's class. Ms Sanchez spoke with Mrs. Brusco and according to her testimony, felt that overall Mrs. Brusco's work with MA was not only positive and that MA was enjoying the session and appropriately responsive, but that Mrs. Brusco's work with MA was challenging and MA was fully engaged throughout the session:

Q: Well, was there anything positive that you saw?

A: Yeah.

Q: What was it?

A: Overall I thought it was very positive. He was appropriately reinforced and he was having a lot of fun. He was very I think, engaged with her. He was asking a lot of W-H questions. I don't know that those were rote responses that he typically asks every session but he was looking through a book and he was asking various questions about pictures in the book and it could have been familiar to him. But overall, he was very engaged and he enjoyed what he was doing. (T1646-1647)

When Christina Hauser testified, it was unclear as to who worked which days and what hours. During Ms. Hauser's testimony it also became apparent that communication between TheraCare and the independent therapist, Kristina Young, was poor at best: Mr. Wanderman asked,

Q. Did the Christina Young lady do weekends when she was employed?

A. I don't know Christina Young. She does not work for TheraCare so I don't really keep any tabs on when she works with MA. (Tr 1018)

In his cross examination of Ms. Hauser, Mr. Wanderman elicited that she and Christina Young have little or no contact. When he asked her if Christina Young worked constantly, Ms. Hauser replied: "I would assume yes. I can honestly say I don't know if she's there continually." (Tr 1016).

Ms Young testified that she is a recent Master's level college graduate but started seeing MA in January, 2006 while she was a student. She works two weekdays. Ms. Young testified that when she was hired by Mrs. A. she believed she would be working and in communication with Ms. Hauser on the same goals and objectives that were already established. (Tr 1344).

## **Parent Counseling and Training**

One of the issues in the due process complaint notice, request for a hearing dated July 29, 2005 was that the school district did not provide for sufficient and direct "parent training" (Pet A). On the IEP 2005-2006, Parent Counseling and Training is listed as 1:1 once weekly for 30 minutes. (SD 4).

In a Dec. 13, 2005 counseling session with school psychologist, Dr. Bernstein, Mrs. A reported that they discussed MA's behavior problems and the need for MA to have counseling that she calls "social skills group". Mrs. A stated in the note, "We put together an amendment to the IEP to add to play therapy for MA – once a week for a half hour. (Pet AA) Parent counseling and training has been useful and valuable. In Commissioner's Regulation Section 200.13 (d) it states under Parent Counseling and Training: "Provision shall be made for parent counseling and education for the purpose of enabling parents to perform appropriate follow up intervention activities at home".

### Free, Appropriate Public Education (FAPE)

The parents maintain that the school district failed to provide MA with a free, appropriate public education (FAPE), and seek Burlington-Carter reimbursement relief plus a compensatory reimbursement award. The parents stated that the IEPs were not reasonably calculated to enable MA to receive a meaningful benefit in the areas of speech-language therapy, sessions for stuttering, parent counseling and training and that the school district failed to administer a Functional Behavior Assessment (FBA) and a Behavior Intervention Plan (BIP).

## FINDINGS OF FACT AND DECISION

This decision is based on the evidence and the testimony that was before me in this matter.

There is no question in the mind of this Hearing Officer regarding the devotion of Mr. and Mrs. A toward their son, MA. Their attempt to provide the best possible education for MA is commendable. Their son, classified as autistic attends a full time day special education program in a social skills class of 8:1:1, within the public school district. His classroom teacher, Mrs. Brusco is skilled in Applied Behavior Analysis (ABA). Parents maintain that the school district may be an appropriate component of his educational program but is not sufficient to meet his many needs.

### Classification

This is no longer an issue as the parent's request for MA to be classified as Autistic was granted at the start of the first hearing.

### Compliance/Interfering Behaviors

This hearing officer believes the school district was remiss in not administering a Functional Behavior Assessment (FBA) and a Behavior Intervention Plan (BIP) and to use the results in planning the IEP goals and objectives. The East Ramapo School District is ordered to conduct a Functional Behavior Assessment (FBA) and a Behavior Intervention Plan (BIP) and to amend goals and objectives, as needed. There was more than sufficient evidence and testimony that spoke to non-compliant and oppositional behavior and self-stimulating conduct.

## Speech Language Therapy

The East Ramapo School District is ordered to provide MA with speech-language therapy five times a week for one hour each, one to one sessions.  I based this decision upon the expert testimony and evaluations of Dr. Steven Blaustein and Dr. Karin Wexler.

During a Re-cross examination of Dr. Blaustein, Mr. Wanderman asked if MA was able to learn given the current CSE recommended speech/language therapy and Dr. Blaustein replied:

"My answer to that question would be, with thirty minutes of therapy, three times a week, I feel he would continue to not make progress that would be needed to give him the effective communication skills that he would need to interact, to use language consistently and functionally, to increase his comprehension, to get his words out....". (Tr1538)

During Direct Examination by Mr. Mayerson, Dr. Wexler testified that group speech and language with other children would not be effective with MA.  "He needs the one to one because of his severity" ( Tr 1806)

In his Cross Examination of Dr. Wexler, Mr. Wanderman asked:

Q:  If you were attending an IEP meeting for MA would you recommend that he not be designated to receive speech and language therapy from his speech and language therapists in a school district?

A:  No, I would recommend that he would get therapy from his speech and language pathologists in the school district for his language issues, for which most speech and language pathologists are well qualified.(Tr 1840)

## Dysfluency (stuttering)

The East Ramapo School District is ordered to financially compensate Mr. and Mrs. A for Dr. Karin Wexler's professional services. She conducted the stuttering sessions and parent interviews starting on May 4, 2006 and should be compensated through June 29, 2007. MA is to receive three 45 minute sessions per week of one to one stuttering therapy at Dr. Wexler's rate of $150 per session.

Mr. Mayerson asked Dr. Wexler to discuss the effect of her work with MA.

Q. Do you see any of that happening with M. even in the three sessions a week that you're providing currently?

A. Yes. Even in the second, after the second child session, the father sent a message via the mother, you know, to tell me that, you know, he was seeing dramatic, surprising differences, improvement.

Q. What kind of changes or differences are you seeing according to his speech and language development since you started working with him?

A. He's speaking more easily. And that's the speech motor goal, to speak more easily. He's also speaking a little bit more freely now, initiating certain things and initiating some things easily. Initiating, it was something that he barely did before or he would be particularly dysfluent when initiating something. (Tr 1814).

Any stuttering sessions or interviews or consultations provided by Dr. Wexler after June 29, 2007 will be the financial responsibility of the parents. Furthermore, Dr. Wexler will be compensated by the school district for one hour each month to provide consultation to the East Ramapo School District's professional staff and to prepare and update IEP goals and objectives for speech – language and stuttering for the CSE to review and amend the IEP, where indicated . The East Ramapo School District will also compensate Dr. Wexler for one hour each month for both parents to have counseling and training as Dr. Wexler emphasized that counseling of both parents is important. This counseling by Dr. Wexler should be made available to both parents and should center on ways to facilitate fluency and respond to MA's dysfluent patterns of speech. It is essential that the parents and school staff become aware of the strategies and techniques and employ them in order to generalize Dr. Wexler's work with MA.

Q. So now tell us, what else besides enhanced modeling, as a technique, have you employed with MA. in your sessions?

A.  O.K, also the enhanced modeling is to MA is also to his parents and  it will be to everyone else in his environment so that they can provide more enhanced modeling in their home and in other real life situations towards carryover into real life. (Tr 1805).

## Extended Day

Parents requested an extended day program, at home but the CSE approved an extended year, and not the extended day.  The extended year must be continued.  The parents, then, secured extended day ABA for MA at home from TheraCare.  Christine Hauser and Dawn Sanchez were hired as ABA therapists and Kristina Young was hired as an independent therapist.  The petitioners seek financial compensation and reimbursement from the school district for these services.

Students may be doing poorly in math or reading and parents may provide additional, privately paid tutoring after the regular school day has ended but school districts are not expected to compensate parents for this.   Parent testified that the school contributed toward MA's education, including ABA services but believed that the home therapists did more.  While the parents have every right to enlist the services of ABA therapists to supplement the ABA activities MA receives in school, the school district is not required to pay for it.   Although there was plenty of testimony and evidence about who did more, the issue is whether MA made progress and received meaningful educational benefit from his day time, full time social skills class with his classroom teacher, Mrs. Brusco.  Not only does the parent and Mrs. Brusco acknowledge this, but the ABA therapist who observed MA receiving ABA in school confirmed this as well.  The classroom teacher and each of these therapists testified.

In his cross examination of Mrs. Brusco, Mr. Wanderman asked:

Q:  Do you have any general knowledge as to whether or not the things that he learned he retained?
A:  His retention skills were very good.
Q:  Would you please explain for the record what the LAP-D is?
A:  This is one of the assessments that we use which is the LAP-D
Q:  What does it tell you?
A:  It generally goes through all his basic assessments.  ..Here it shows us that MA was scoring a chronological age of 66 months.
Q:  How does that compare with a kindergarten child?
A:  He was scoring age appropriate.
Q:  As compared to a non-disabled child?
A:  That is correct
Q:  I didn't ask you about the WRAT, what does that tell us, if anything?
A:  This shows us that MA scored on the kindergarten level for all areas, including

reading, spelling and arithmetic..... which is what we hope for in kindergarten, in
a typical developing kindergarten class. (Tr 2481, 2482).

The testimony and preponderance of evidence did not permit this Hearing Officer to
order the East Ramapo School District to compensate the petitioners for the at home
therapy that they had arranged. I can not offer any financial relief to petitioners for the
extended day, at home, after school ABA therapy sessions.

## Parent Counseling and Training

The East Ramapo School District is ordered to provide parent counseling and training
one to one, once a month for a one hour session

The Pre-School IEP 2004-2005 listed parent counseling and training as one to one,
twice monthly for one hour per session. (Pet P). However, in the IEP 2005-2006,
parent counseling and training was decreased to one to one, one time monthly at 30
minutes per session (SD 3 and SD 4).

## Free, Appropriate Public Education (FAPE)

The East Ramapo School District's IEP was inadequate and failed to provide MA with
a free, appropriate, public education (FAPE).

The IEPs were not reasonably calculated to enable MA to receive a meaningful benefit
in the area of speech-language therapy, sessions for stuttering, parent counseling and
training and failure to administer the FBA and BIP.

The East Ramapo School District eliminated 3:1 small group speech therapy and added
5:1"Language Instruction" two times weekly in the classroom. There was no mention
of duration or definition of language instruction, its difference with speech-language
therapy and who would deliver this group language instruction in the classroom.

The East Ramapo School District did not provide parents with adequate and appropriate
parent counseling and training.

16

There are no compelling equitable considerations that would preclude or diminish a
reimbursement award

Burlington, 471 U.S. 359,370 (1985); Florence County School District Four v. Carter;
510 U.S. 7 (1993)

The parties have had full opportunity to present their cases.

Mr. and Mrs A, Parent petitioners, Mr. Wanderman, attorney for the school district, and
Mr. Mayerson, attorney for the parents and I received the verbatim transcripts of what
was said at this hearing. I reviewed them, together with the exhibits plus relevant laws,
regulations and policies. I have rendered a decision and have mailed a copy of the
written Findings of Fact and Decision to the parents, their attorney, to the school district's
attorney, to the school district and a redacted copy to the State Education Department. In
my decision, I have reiterated the issues as we agreed upon at this hearing, stated the facts
as supported by evidence presented, referenced all relevant laws, regulations and policies,
concisely stated the conclusions I have reached and the basis for those conclusions and
stated the actions to be taken to implement my decision.

My decision is final unless petitioner or school district asks for a review of the decision
(appeal) by the State Review Officer (SRO). If you want to appeal the hearing officer's
decision to the State Review Officer, a notice of intention to seek review of the decision
must be served on the school district as per 279.2 of the Regulations of the
Commissioner of Education. The written decision of the State Review Officer, a copy of
which is mailed to the parents and the board of education, shall be final, provided that
either party may seek judicial review. Fail to file the petition in a timely fashion will
result in a waiver of the right to appeal this decision.

Respectfully submitted,

Richard Thaler. Hearing Officer

Submitted to NYS Education Department (VESID) on December 30, 2006.
Copies sent to parents, school district and both attorneys on December 30, 2006.

Exhibits Entered Into the Record by E. Ramapo CSD
Case # 15473

| Exhibit | Date | Pages | Title | Submitted By |
|---|---|---|---|---|
| 1 | 9/30/05 | 1 | Invitation to CSE for June 15, 2005 | SD |
| 2 | 9/30/05 | 9 | Safeguards Notice to Parents | SD |
| 3 | 9/30/05 | 7 | Preschool IEP 2005-2006 | SD |
| 4 | 9/30/05 | 10 | IEP 2005-2006 | SD |
| 5 | 9/30/05 | 11 | List of Goals | SD |
| 6 | 9/30/05 | 2 | Occupational Therapy Eval HASC,3/23/05 | SD |
| 7 | 9/30/05 | 1 | Clinical Summary-Dr. Wells 7/10/03 | SD |
| 8 | 9/30/05 | 2 | Preschool Classroom Observation 1/21/04 | SD |
| 9 | 9/30/05 | 7 | Psychological Evaluation Dr. Solnica 4//27/05 | SD |
| 10 | 9/30/05 | 2 | Medical Form/ Related Services Prescription | SD |
| 11 | 9/30/05 | 1 | Social History Update 4/14/05 | SD |
| 12 | 9/30/05 | 2 | Pediatric Neurology Eval Dr. Katz 1/3/05 | SD |
| 13 | 9/30/05 | 1 | Classroom Observation-Annual Review 3/22/05 | SD |
| 14 | 9/30/05 | 6 | Speech/Lang Eval Dr. Blaustein 4/12, 5/3/05 | SD |
| 15 | 9/30/05 | 8 | ABA/Ed Annual Review, Theracare 4/19/05 | SD |
| 16 | 9/30/05 | 5 | Annual Ed Review HASC 3/14/05 | SD |
| 17 | 9/30/05 | 3 | Speech/Lang Annual Review HASC 3/29/05 | SD |
| 18 | 9/30/05 | 5 | Annual Ed Review HASC 3/14/05 | SD |
| 19 | 9/30/05 | 1 | CPSE Recommendations-Placement, Consent | SD |
| 20 | 9/30/05 | 1 | CSE Recommendations-Placement, Consent | SD |
| 21 | 9/30/05 | 3 | Board of Ed Review, Letter to Parents | SD |
| 22 | 9/30/05 | 1 | Ltr from Parent to SD, dated 9/15/05, received by SD received 6/17/05 | SD |
| 23 | 9/30/05 | 1 | Ltr Dr Albers to Parents, 6 /28/05 | SD |
| 24 | 11/15/05 | 16 | Ltr Slackman to Parents 11/3/05 w/corrected 2005-2006 IEP | SD |
| 25 | 6/14/06 | 32 | Dr. Wexler's notes, stuttering eval | SD |
| 26 | 9/29/06 | 3 | Student's Attendance Data 9/5/05-6/5/06 | SD |
| 27 | 9/29/06 | 37 | IndivAssesForms, Edmark, WRAT3,LAP-D | SD |

Exhibits Entered into Record by Parents
Case # 15473

| Exhibit | Date | Pages | Title | Submitted By |
|---|---|---|---|---|
| A | 11/15/05 | 5 | Request for hearing, rec'd by SD 7/29/05 | Pet |
| B | 5/11/06 | 1 | Ltr Dr. Albers to Parents re: Classification, dated 6/28/05 | Pet |
| C | | | Same as SD 4, IEP 2005-06 | |
| D | 11/15/05 | 6 | Dr. Blaustein's Speech/Lang Eval, 4/12/05, 5/3/05 | Pet |
| E | | | Same as SD 9, Psychological Eval, Dr. Solnica 4/27/05 | Pet |
| F | 5/11/06 | 8 | ABA 7 Ed Annual Review, TheraCare, 4/19/05 | Pet |
| G | | | Same as SD 11, Social History Update, 4/14/05 | Pet |
| H | | | Not entered into evidence | |
| I | | | Same as SD 13, Classroom Observ, Annual Review 3/22/05 | Pet |
| J | | | Same as SD 6, Occupational Therapy Eval, HASC, 3/22/05 | Pet |
| K | | | Same as SD 18, Annual Ed Review | Pet |
| L | 5/11/06 | 2 | Prong 2 only, Pediatric Neuro Eval, Dr. Katz, 1/3/05 | Pet |
| M | | | Same as SD 12, Pediatric Neuro Eval, Dr. Katz, 1/3/05 | Pet |
| N | 11/16/05 | 1 | Ltr 6/1/04 Slackman to parents re: 2 signed consents, encl. IEP | Pet |
| O | 5/11/06 | 1 | Ltr, Slackman to Parents, 5/7/04, Bd of Ed, reviewed Rec of CPSE | Pet |
| P | 9/30/05 | 9 | Preschool IEP 2004-2005 w/ Ltr 4/29/04 Slackman to Parents | Pet |
| Q | 11/15/05 | 2 | CPSE Rec for Initial Placement Parental consent, 2 forms | Pet |
| R | 5/11/06 | 3 | Speech/Lang Eval, Dr. Braunfeld, HASC, 7/24/03 | Pet |
| S | 5/11/06 | 2 | Occupational Eval, L. Gross, HASC, 7/24/03 | Pet |
| T | 5/11/06 | 4 | Physical Therapy Eval, R.Coren, HASC, 7/23/03 | Pet |
| U | 5/11/06 | 2 | Educational Eval, HASC, 7/7/03 | Pet |
| V | 11/15/05 | 1 | Ltr Parent to Slackman, 5/5/04, request for clarification | Pet |
| W | 11/15/05 | 1 | CPSE K Annual Review Date 6/15/05, rec OHI classification | Pet |
| X | 11/15/05 | 15 | Student Profile Report 8 students incl M , Grandview Kdg | Pet |
| Z | 11/16/05 | 9 | Dr. Blaustein's handwritten notes | Pet |
| AA | 5/11/06 | 1 | Parent Counseling with Dr. Bernstein 12/3 Notes | Pet |
| BB | 5/11/06 | 6 | Handwritten Notes Classroom Observations Various dates | Pet |
| CC | | | Not in evidence | |
| DD | 5/11/06 | 6 | Progress Report for IEP Goals/Objectives 2005-06 | |
| EE through KK | | | Not in Evidence | |
| LL | 1/31/06 | 139 | C. Hauser's Data Book | Pet |
| MM | 1/31/06 | 8 | Daily Session Notes, TheraCare, C. Hauser, 9/05-12/05 | Pet |
| NN | 1/31/06 | 29 | Speech session notes,04-05, HASC,dated 12/20/05 | Pet |
| OO | 5/11/06 | 12 | Home Supervision Logs, Team Meeting Notes, CSE IEP Mtgs | Pet |
| PP Though YY | | | Not in evidence | |
| ZZ | 5/11/06 | 2 | Thera Care Pre- School Observation 12/30/04 | Pet |
| AAA | | | Not in evidence | |
| BBB | 8/23/06 | | Graphs, Notes, Data Collection, Drawings, Work Sheets | Pet |
| CCC | 8/23/06 | 5 | E. Ramapo CSD Calendar, Mrs. Brusco's Attendance | Pet |
| DDD | 8/23/06 | 10 | Annual Review 2005-06, Ed, PT, OT, Speech | Pet |

IHO 1 11/15/05    1 page    Subpoena  Adelle Rupp, Mindy Green  to appear 11/16/05

Joint 1  5/10/06   3 Communication Books                                    Pet
Joint 2  5/11/06   62 pages   E-mail Communication between Dawn Sanchez
                              And Mrs. Brusco                              Pet

In the Matter of Mr. and Mrs. A and East Ramapo Central School District

Individuals Who Provided Testimony At The Hearing

| Date | Name | Title | Representing |
|------|------|-------|-------------|
| 9/30/05<br>11/15/05<br>11/16/05 | Amy Albers, PhD | Chairperson, CSE | E. Ramapo CSD |
| 11/15/05 | Marlene Slackman | Chairperson, CPSE | E. Ramapo CSD |
| 11/16/05<br>5/11/06<br>6/14/06<br>8/23/06 | Mrs. A | Parent | Petitioners |
| 11/16/05<br>2/2/06<br>5/11/06 | Steven Blaustein, PhD | Speech-Lang-Voice Pathology by phone | Petitioners |
| 11/16/05<br>12/19/05<br>5/11/06 | Christina Hauser | ABA Teacher Theracare | Petitioners |
| 12/19/05 | Adele Rapp | HASC Teacher | Petitioners |
| 12/19/05<br>1/31/06<br>2/2/06<br>5/11/06 | Dawn Sanchez | Theracare Supervisor | Petitioners |
| 1/31/06 | Marcy Glicksman | Program Director, HASC by phone | Petitioners |
| 5/10/06 | Kristina Young | ABA Therapist | Petitioners |
| 8/23/06<br>9/28/06<br>9/29/06 | Adrienne Brusco Maviglia | Classroom teacher, Spec Ed | Petitioners |
| 6/14/06 | Karin Wexler, PhD. | Fluency Disorder Specialist | Petitioners |

In the matter of East Ramapo School District and Mr. and Mrs. A. representing MA

| Hearing #1 | Sept. 30, 2005 | Dr. Amy Albers | |
| Hearing# 2 | Nov. 15, 2005 | Dr. Amy Albers | Marlene Slackman |
| Hearing #3 | Nov. 16, 2005 | Dr. Amy Albers<br>Christina Hauser | Dr. Steven Blaustein<br>Mrs. A. |
| Hearing # 4 | Dec.19, 2005 | Adele Rapp<br>Dawn Sanchez | Christina Hauser |
| Hearing # 5 | Jan. 31, 2006 | Christina Hauser | Marcy Glicksman |
| Hearing # 6 | Feb. 2, 2006 | Dawn Sanchez | Dr. Steven Blaustein |
| Hearing # 7 | May 10, 2006 | Kristina Young | Mrs. A. |
| Hearing # 8 | May 11, 2006 | Christina Hauser<br>Dawn Sanchez | Mrs. A.<br>Dr. Blaustein |
| Hearing # 9 | June 14, 2006 | Dr. Karin Wexler | Mrs. A. |
| Hearing # 10 | August 23, 2006 | Mrs. A. | Mrs. Brusco Maviglia |
| Hearing # 11 | Sept. 28, 2006 | Mrs. Brusco Maviglia | |
| Hearing# 12 | Sept 29, 2006 | Mrs. Brusco Maviglia | |