UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

J.A. and E.A., on behalf of M.A.,

                                    Plaintiffs,                Case No.: 07 CV 07075 (CJB)

                  - against -

East Ramapo Central School District,

                                Defendants.

-----------------------------------------------------------------

## PLAINTIFFS' MEMORANDUM OF LAW ON MODIFIED *DE NOVO* REVIEW

### PRELIMINARY STATEMENT

Plaintiffs' submit this brief and accompanying affidavit of Gary S. Mayerson (a) in opposition to defendant's motion seeking affirmance of the SRO's April 9, 2007 decision (Ex. F)[1], and (b) in support of plaintiffs' August 8, 2007 Complaint (Ex. G) seeking to reverse the SRO (and the IHO's prior December 30, 2006 decision), to the extent that they only grant a small portion of plaintiffs' request for reimbursement relief.[2]

### PROCEDURAL HISTORY

**I. What Plaintiff Won Before The IHO**

Plaintiff M.A. is a young boy diagnosed with Pervasive Developmental Disorder, a serious autism spectrum disorder. By request for hearing dated July 29, 2005 (Ex. A), plaintiffs alleged numerous serious procedural and substantive violations under the IDEIA statute and

---

[1] Please note that all exhibits referenced in this memorandum of law refer to the Exhibits annexed to the accompanying Affidavit of Gary S. Mayerson.
[2] The IHO's "Findings of Fact and Decision" and the SRO's Decision already have accorded certain reimbursement relief to plaintiffs. See Exs. C and F. Accordingly, it is plaintiffs' position that regardless of the extent to which this Court accords additional reimbursement relief, plaintiffs should be entitled, even at this stage, to make a fee application under the fee-shifting provisions of the IDEIA statute. Plaintiffs intend to make such a motion after this Court determines the final scope of the reimbursement relief that is appropriate here.

sought appropriate declaratory and reimbursement relief. After an extended trial, the IHO held that defendant had deprived plaintiff M.A. of the free and appropriate public education ("FAPE") that M.A. is entitled to under law and statute.

In the IHO's December 30, 2006 "Findings of Fact and Decision," the IHO held that the "East Ramapo School District's IEP was inadequate and failed to provide M.A. with a free [and] appropriate public education ("FAPE")" for the 2004-2005 and 2005-2006 school years. (Ex. C, p. 15). Furthermore, the IHO held there were "no compelling equitable considerations that would preclude or diminish a reimbursement award." (Ex. C, p. 16). Accordingly, the District was ordered to reimburse M.A. for five hours per week of 1:1 speech and language therapy, three 45-minute sessions per week of 1:1 dysfluency (stuttering) therapy, and two hours per month of 1:1 parent training and counseling.[3] (See Ex. C, p. 12, 13, 15).

The IHO almost got it right. The only reimbursement requested by M.A. that was not awarded was "extended day" (as opposed to extended year) services, i.e., after school services in the form of ten hours per week of 1:1 home- and community-based Applied Behavior Analysis ("ABA") support. According to the IHO, M.A.'s extended day ABA services are in the nature of after school "tutoring" that no school district should be expected to pay for. (Ex. C, p. 14). Specifically, the IHO reasoned that "parents may provide additional, privately paid tutoring after the *regular* school day has ended, but school districts are not expected to compensate parents for this." (Ex. C, p. 14). The IHO's personal feelings necessarily promote a "one size fits all" model of appropriateness that is inconsistent with the individualized mandates of the IDEIA and the more relaxed standards applicable to Prong II claims.

---

[3] Incredibly, in the face of a very pronounced and serious dysfluency (stuttering) disorder, defendant's strategy was to do *nothing*, on the theory that to take action would only call attention to the problem! Plaintiffs' expert witnesses, renowned experts in the field, explained why this kind of backward Neanderthal thinking went out of style many years ago.

The IDEIA statute does not confine the availability of special education services to what the IHO referred to as a "regular school day." The IDEIA statute does not define a "regular school day," nor does it define a minimum standard of appropriateness. Indeed, special education services do not even have to be delivered in school. The IDEIA defines the term "special education" as including "specially designed instruction…to meet the unique needs of a child with a disability, including…instruction conducted in the classroom, *in the home*…and in other settings."[4] 20 U.S.C.S. § 1401(29). Maybe that is why they call it "special" education.

Once there is evidence of a material FAPE deprivation, the important standards enunciated by the Second Circuit in <u>Frank G. v. Board of Educ. of Hyde Park</u>, 459 F.3d 356 (2d Cir. 2006), <u>cert. denied</u>, 128 S.Ct. 436 (2007), allow reimbursement upon a mere finding of substantive "appropriateness," guided by the Court's less stringent Prong II standard, unless there are compelling equitable considerations.[5] We respectfully urge that this Court should find that M.A.'s home- and community-based program of 1:1 ABA services amply met the Prong II standard of reimbursability and that there are no compelling equitable considerations that would bar or diminish a reimbursement award. Here, the SRO glossed over the Prong I FAPE deprivations and failed to make any determinations as to the Prong II and Prong III issues.

In the case at bar, the SRO compounded the IHO's error (of imposing his personal "regular school day"-driven philosophy) by largely *stripping away* nearly all of the relief that the

---

[4] Similarly, the IDEIA statute provides for extended services that may go far beyond what a school district may normally provide. See 34 C.F.R. § 300. Even the SRO has previously ruled on this issue. "It is well-established that the unique needs of children with disabilities must be considered in determining the specially designed instruction they will receive… Here, the [IHO] ordered that services be reduced based on the length of a school day, rather than based on a determination of what level of services were appropriate to meet the child's special education needs. I am constrained to find here that the impartial hearing officer erred in determining that [the District] was not obligated to provide reimbursement for services beyond the hours of a typical school day." <u>Application of a Child with a Disability</u>, Appeal No. 06-011, p. 5. (Ex. H).
[5] There were *no* findings of parental misconduct that would warrant preclusion or diminishment of the reimbursement claim here.

IHO did grant.[6]  The SRO failed to properly apply the less stringent standards set forth in Frank G. and, in essence, improperly took away IHO-ordered reimbursement relief from this family just as he had done to the family profiled in a recent Wall Street Journal article. (See Ex. I).  The SRO, just like the IHO, also erred in failing to award reimbursement relief for M.A.'s home- and community-based 1:1 ABA program.

The evidence presented at the impartial hearing showed that M.A.'s school-based ABA programming was but a small fraction M.A.'s ABA program.  M.A. was receiving the majority of his ABA teaching at home.  The teaching benefit thus arose largely from the *home-based* ABA program.  Significantly, the IHO *did not* find that M.A.'s home- and community-based ABA services were ineffective or inappropriate; on the contrary, his decision *presupposes* that M.A.'s home-based ABA services *were* substantively appropriate and helpful to M.A.  Rather, the IHO's failure and refusal to award reimbursement for any after school ABA teaching support stems entirely from the IHO's personal philosophical belief that special education services can only be appropriate and reimbursable if delivered during the confines of a "regular school day."

## II.  Plaintiff's Limited Appeal to the SRO[7]

Plaintiffs' sought a partial review and modification of the IHO's December 30, 2006 "Findings of Fact and Decision."  Specifically there were two issues: first, whether or not defendant's IEP failure to classify M.A. under "autism" had been rendered moot (as the IHO erroneously decided); and second, whether the IHO improperly denied plaintiffs' reimbursement

---

[6] The only relief the SRO did not strip away was two months of dysfluency therapy; however, these two months were reduced from the original 14 months granted by the IHO.

[7] We call this Court's attention to disturbing allegations set forth in a July 9, 2007 Wall Street Journal article (*See* Exhibit H).  Had plaintiffs' had knowledge of these allegations prior to the briefing before the SRO, plaintiff would have moved to recuse the SRO.  It is plaintiffs' position, with all due respect, that the SRO and his office had an impermissible conflict of interest, actual bias in favor of school districts and against parents, and the appearance of impropriety.  The State Legislature created the SRO in the 1990s in response to concerns that it was a conflict of interest for the New York State Education Department to decide appeals from IHO decisions.  Now, once again, the SRO is both figuratively and literally "in bed" with the New York State Education Department.

claim for home- and community-based ABA services, supplemental to his school-based services. Defendant cross-appealed from the portion of the IHO's decision which found that it denied M.A. a FAPE for the 2005-2006 school year, and which ordered reimbursement for privately obtained speech and language therapy.

Despite the fact that the IHO's decision as to the 2004-2005 school year was not appealed by defendant, the SRO took it upon himself to review the IHO's decision as to that school year. The SRO improperly reviewed reversed the IHO's determination and found that respondent offered M.A. a FAPE during the 2004-2005 school year. (Ex. F, p. 12-13) The SRO continued to strip away M.A.'s reimbursement relief by reversing the IHO's determination that M.A. had been denied a FAPE regarding the Summer of 2005 and the 2005-2006 school year. (Ex. F, p. 13-18).

### ARGUMENT

**I. The SRO erroneously applied the burden of persuasion set forth in <u>Schaffer v. Weast</u> in holding that plaintiffs' had the burden of persuasion to demonstrate that respondent failed to offer the child a FAPE.**

The SRO noted that the IHO's decision was unclear as to which party was assigned the burden of persuasion on Prong I of the <u>Burlington</u>/<u>Carter</u> analysis. M.A. was initiated by a due process request dated July 29, 2005; the hearing "commenced" (within the definition of the Part 200 Regulations governing impartial hearings) on September 30, 2005. Both of these dates are *before* the decision in <u>Schaffer v. Weast</u>, 546 U.S. 49 (2005). Whether one deems the commencement of the case the date the due process request was filed or the first date of physical appearance, the decision in <u>Schaffer</u> shifting the burden of persuasion to the parents should not apply. The SRO erroneously held that the plaintiffs' date of appeal is the starting date of M.A.'s

case, thereby shifting the Prong I burden to parents (pursuant to Schaffer), rather than keeping the Prong I burden on the school district.

It is a well-established rule of law that the law that applies at the time the cause of action accrues is the law that should apply in a subsequent case. Ex post facto laws are prohibited in federal law by Article I, section 9 of the U.S. Constitution and in state law by section 10. Here, the years that are being adjudicated are the 2004-2005 and 2005-2006 schools years. M.A.'s parents are challenging the IEPs that the District developed prior to these two school years, to be enacted during the respective school years. The cause of action as to both of these years arose at the time that the IEPs were developed. Both IEPs, the 2004-2005 IEP and the 2005-2006 IEP were developed prior to the decision in Schaffer. Accordingly, we urge that the burden of proof and persuasion as to Prong I was on the defendant.[8]

In the alternative, even assuming that plaintiffs had the burden of persuasion and proof pursuant to Schaffer, we submit that plaintiffs easily *met* any Prong I burdens.

**II. The SRO (and IHO) failed to apply the less stringent standards set forth in <u>Frank G.</u> as to Prong II of the <u>Burlington/Carter</u> test.**

Once, as here, there has been a FAPE deprivation, thereby establishing Prong I, the IHO and SRO should have applied the less stringent Prong II standards set forth by the Second Circuit in Frank G. v. Board of Educ. of Hyde Park, 459 F.3d 356 (2d Cir. 2006), cert. denied, 128 S.Ct. 436 (2007). In that case, the Court held that there is a far less stringent standard that is applied to Prong II reimbursement claims. Once Prong I is established, a parent's choice under Prong II need not be perfect, need not satisfy all the child's needs, and need not satisfy all the child's needs, and need not even be provided in the child's least restrictive environment.

---

[8] Parenthetically, we note that the legislature recently shifted the Prong I burdens of proof and persuasion *back* to where it was pre-Schaffer, i.e., back to the school district, for case "commencing" after October 15, 2007.

The IHO's decision erroneously presupposes that extended day ABA services (i.e., services outside of a "regular school day") are simply beyond what a school district may be "expected" to provide.  We beg to differ.  As a matter of law and statute, the IHO's decision effectively took the "individual" out of the IDEIA, and it took the "special" out of special education.  Where, as here, there has been a material Prong I FAPE deprivation, and we are talking about special education services, the issue is not what services the school district would be expected to provide during a "regular school day," but rather whether the unilateral services secured by the child's parents are "appropriate" in the sense of their efficacy and whether they are "reasonably calculated" as per <u>Frank G.</u>  Where, as here, the unilateral programming has a demonstrable beneficial effect on the educational progress of the child, we urge parents should be reimbursed under Prong II.

## CONCLUSION

Based on this Court's independent review of the administrative record after giving any required due deference to the IHO's fact findings, and after considering *de novo* any questions of law or mixed questions of law and fact, we urge that this Court reverse the SRO to the extent of ordering a reimbursement award that the SRO failed and refused to grant.  In all events, this Court should grant plaintiffs leave to file a fee application as a "substantially prevailing party."

Dated: January 18, 2008
    New York, New York

    *s/ Gary S. Mayerson*
    Gary S. Mayerson (GSM 8413)
    *Attorney for Plaintiffs*
    Mayerson & Associates
    330 West 38th Street, Suite 600
    New York, New York 10018