**Mayerson & Associates**
330 W. 38th Street, Suite 600
New York, New York 10018

**mayerslaw.com**

GARY S. MAYERSON *♦
CHRISTINA D. THIVIERGE *
STACEY D.C. BROCK ∞⚬
ERIC NACHMAN, OF COUNSEL

\* ALSO ADMITTED IN NEW JERSEY
∞ ALSO ADMITTED IN MASSACHUSETTS
⚬ ALSO ADMITTED IN CALIFORNIA
♦ ALSO ADMITTED IN FLORIDA

TEL: 212.265.7200
FAX: 212.265.1735
E-MAIL: GARY@MAYERSLAW.COM

July 29, 2005

VIA FACSIMILE AND REGULAR MAIL

Dr. Mitchell J. Schwartz
East Ramapo Central School District
Office of Special Student Services
105 South Madison Avenue
Spring Valley, New York  10977

        Re:  Moshe Abboudi (D.O.B. 10/13/00)

Dear Dr. Schwartz:

**The Problem**

     We represent Moshe Abboudi ("Moshe") and his parents, Jonathan and Elisheva Abboudi. Moshe's birthday is October 13, 2000 and, as the District is aware, the Abboudi family resides at 156 East Willow Tree Road. On Moshe's behalf, we respectfully request an impartial hearing to adjudicate claims for declaratory and *Burlington/Carter* reimbursement relief for purposes of the 2004-2005 school year, including the Summer of 2005, and the 2005-2006 school year, including the Summer of 2006. We also assert a claim for compensatory speech and language services with respect to the 2004-2005 school year, and the Summer of 2005. To the extent that Moshe's claims cover time frames prior to July 1, 2005, we urge that the pre-July 1 versions of the federal IDEA statute and New York State implementing regulations are applicable. To the extent that Moshe's claims will cover post July 1 time frames, we urge that the amendments applicable as of July 1, 2005 control.

As summarized below, Moshe's IEP for the 2005-2006 school year offers Moshe a placement at Grandview Elementary School. Moshe's parents *accept* such placement on a "without prejudice" basis, *provided* that Moshe is going to be placed at Grandview according to his functioning level (as opposed to other criteria that might make his classroom inappropriate for Moshe). While Grandview may be an appropriate *component* of Moshe's educational program (assuming that Moshe is placed according to his functioning level), it still is not sufficient, in and of itself, to properly and appropriately address Moshe's many needs. Moshe's parents gave notice to the District regarding their intention to seek reimbursement for additional services secured by them during the 2004-2005 school year, and the Summer of 2005 (Moshe having then been declared eligible for 12 months of services). To the extent that additional notice is required for purposes of the 2005-2006 school year, we provide the District with notice that Moshe's parents intend to secure extended day ABA and speech support for Moshe at home and in the community, and that they will look to the District for reimbursement. This would include approximately 15 hours per week of direct 1:1 ABA intervention and teaching, plus supervision, parent training, consultation, and "team meetings." This also is anticipated to include approximately 5 hours per week of direct 1:1 speech therapy to address Moshe's pronounced "stuttering," etc.

We hereby communicate to the District that Moshe's family and counsel are willing and eager to meet to discuss an amicable resolution of the issues raised in this request, with the hope of obviating any need to actually proceed to a due process hearing.

As alleged below, Moshe intends to show at the hearing that East Ramapo failed, both procedurally and substantively, to provide him with a free and appropriate public education and that, on appropriate notice, Moshe's parents secured supplemental services and interventions that were and are appropriate for Moshe in that they were and are *calculated* to provide Moshe with a meaningful benefit. At issue is declaratory relief and reimbursement relief for the additional services that Moshe's parents have been paying for (or, for future time frames, will be paying for).

Moshe was born on October 13, 2000 and has a diagnosis of Pervasive Developmental Disorder ("PDD"), which is a serious *autism* spectrum disorder. Moshe has been attending his IEP placement, and his parents have been supplementing Moshe's IEP placement with additional services and interventions. On or about April 27, 2004, the District convened an IEP meeting for Moshe and made recommendations for the 2004-2005 school year. By all appearances, the District did not send out a copy of an IEP document for the April 27, 2004 IEP meeting until *after* the District had received a May 5, 2004 letter from Moshe's mother in which she complained of not having received an IEP and communicated to the District that she and her husband would look to the District to fund the continuation of Moshe's home ABA program, which Moshe needed to promote the generalization that he was having so much difficulty with in school. The 2004-2005 IEP, upon information and belief, mischaracterizes what was said and communicated at Moshe's IEP meeting.

The IEP Finally Received From The District For 2004-2005 Was Inappropriate

The District's IEP for the 2004-2005 school year was substantively inadequate because it failed to adequately take into account Moshe's need to have intensive 1:1 ABA delivered both at home and at school to promote true learning, generalization and functional use of skills across personnel and environments. The District's IEP also failed to properly assess and address Moshe's need for much more intensive speech and language therapy. On its face, the District's IEP *conditioned* any home ABA hours on Moshe's mother agreeing to *decrease*, hour for hour, any ABA intervention that Moshe would have received at school. We reject the concept that a child with Moshe's needs must "cannibalize" services if, as here, additional ABA services are warranted and needed by the child.

The District's IEP for the 2004-2005 school year also was inappropriate and/or defective by reason of the following problems: (a) the District failed to meaningfully consider Moshe's need for Assistive Technology; (b) the District failed to properly assess Moshe's "present levels," not only academically and cognitively, but also behaviorally, and the extent to which Moshe was presenting with interfering behaviors; (c) the District apparently failed to measure performance against individual goals and objectives, as such goals and objectives were written; (d) many goals and objectives appear to be insufficiently challenging; (d) many goals and objectives are ambiguous and/or are not objectively measurable; (e) the District's goals and objectives were not adequately tailored in quality or in number to meet Moshe's unique needs; and (f) the District failed to adequately assess the gravity of, and properly address Moshe's unique and pronounced speech and language deficits, which include a severe "stutter.". Although Moshe presents with interfering behaviors, there also is no indication that the District ever assessed or recommended Moshe for a Functional Behavioral Assessment ("FBA") or a BIP. The IEP also should have made provision for appropriate, sufficient and direct "parent training."

Moshe's parents secured and paid for *additional* ABA in the home, as Moshe had already been receiving. Moshe's parents also secured appropriate supervision, consultation, and parent training. Such intervention was reasonably calculated to continue to provide Moshe with a meaningful educational benefit and was appropriate for Moshe. The District should reimburse Moshe's parents for having secured and paid for such services, including appropriate supervision, consultation and parent training.

The IEP Proposed For 2005-2006 Also Is Inadequate

On June 15, 2005, the District convened an IEP meeting ostensibly to develop an IEP for the 2005-2006 school year. The District recognized Moshe's prior diagnosis of PDD (an autism spectrum disorder) by a neurologist, and continues to reflect issues with stereotypic behavior, communication deficits, compliance issues, and oppositional behavior, among other problems. However, based ostensibly on a single assessment known as The Gilliam Autism Rating Scale, and without conducting any further,

confirmatory assessments such as the ADOS, the District concluded that Moshe should be declared eligible for special education services under the heading of "other health impaired." We challenge this classification at the outset, and contend that in view of the *prior* PDD diagnosis that the District previously had accepted and relied upon, and the District's recognition of a variety of autism spectrum type presentations and behaviors on Moshe's part, Moshe should have been properly classified under "autism" rather than the less specific "OHI" classification. At the very least, the District should have ordered further testing of Moshe on the "autism" classification issue as part of its required due diligence to assess "present levels." The District recklessly embraced the OHI classification because, upon information and belief, the District concluded that classifying Moshe that way might significantly *reduce* the District's obligation to educate Moshe (e.g. speech and language, parent training and counseling, etc.).

The District's IEP for the 2005-2006 school year does not offer Moshe a FAPE for the following reasons:
- ✓ The OHI classification, more accurately, should have been "autism"
- ✓ The District failed to develop a functional behavioral assessment (FBA) to properly address Moshe's numerous interfering behaviors through the development and implementation of appropriate behavior intervention plans (plans that would be predicated upon the FBA analysis);
- ✓ The District failed to offer Moshe's parents appropriate, individualized and direct parent training (and we will show that at least two hours a week of direct parent training should be provided to Moshe's parents)
- ✓ The District's offer of speech and language therapy is inadequate, and the District, once again, failed to appropriately assess Moshe's present levels, and their significance in terms of "calculating" appropriate services
- ✓ The District's IEP fails to properly take into account Moshe's need for consistency and his admitted difficulty with "generalization," warranting an appropriate extended day teaching program of at least 15 hours per week of direct 1:1 ABA teaching and support, plus appropriate supervision, consultation and "team meeting" time;
- ✓ The District's IEP fails to develop any kind of meaningful "transition plan" that would be based on Moshe's progress
- ✓ Whereas the District's IEP for 2004-2005 noted that Moshe was eligible for ESY services in order to prevent substantial regression, and while Moshe has shown evidence of actual regression, and while significant regression would be anticipated for Moshe even if he had not shown regression, the District's IEP for 2005-2006 strips presumptively defers or resists the issue of ESY eligibility
- ✓ The IEP goals and objectives are overwhelmingly ambiguous, insufficiently challenging and/or not objectively measurable and, upon information and belief, were drafted without first "baselining" Moshe's skill levels and without first obtaining the actual "percentages" of performance that Moshe accomplished as against his goals and objectives for 2004-2005

- ✓ The IEP does not contain "short term" goals, as most of the goals and objectives are to be measured either at the end of the 2005-2006 school year, or at the end of the third marking period

<u>The Proposed Solution</u>

At the hearing, we will show that there are no compelling equitable considerations that would preclude or diminish a reimbursement award. For both the 2004-2005 and 2005-2006 time frames, the IHO should determine that the District failed to offer Moshe a FAPE and accord *Burlington/Carter* reimbursement relief to the extent that Moshe's parents have secured and paid for supplemental ABA and speech services. For purposes of the 2004-2005 school year and the Summer of 2005, the IHO should award compensatory speech and language services, to the extent deemed appropriate, based upon gross failures by the District. On an overall basis, the IHO should find for Moshe and his parents as the "substantially prevailing party."[1]

Sincerely,

Gary S. Mayerson

---

[1] To the extent that Moshe and his parents are awarded relief that would be tantamount to securing prevailing party status, application would be made before a court of competent jurisdiction to recover attorneys' fees and other recoverable costs, including expert witness fees.