

## The University of the State of New York

### The State Education Department
State Review Officer

No. 06-011

Application of a CHILD WITH A DISABILITY, by her parents, for review of a determination of a hearing officer relating to the provision of educational services by the New York City Department of Education

**Appearances:**

Mayerson & Associates, attorneys for petitioners, Christina D. Thivierge, Esq., of counsel

Hon. Michael A. Cardozo, Corporation Counsel, attorney for respondent, Duncan Peterson, Esq., of counsel

### DECISION

Petitioners appeal from the portion of the decision of an impartial hearing officer which denied in part their request to be reimbursed for a private home-based education program and related services for their daughter for the 2005-06 school year. The appeal must be sustained in part.

At the time of commencement of the impartial hearing on August 4, 2005, petitioners' daughter was seven years old and entering the third grade (Joint Ex. C). For the duration of the hearing process, she received a private home-based educational program and related services on a twelve-month basis under pendency, which included 40 hours per week of instruction using one-to-one applied behavioral analysis (ABA), two and one half hours per week of ABA supervisory services, two hours per week of parent training, individual speech-language therapy five times per week for one hour, individual occupational therapy (OT) five times per week for one hour, individual physical therapy (PT) five times per week for one hour, and reasonable transportation expenses necessary to implement the program (Joint Ex. B at pp. 14-15; IHO Decision, p. 3). The child's eligibility for special education programs and classification as a student with autism are not in dispute (8 NYCRR 200.1[zz][1]; Joint Ex. D).

As set forth in the report of a private evaluator, the child reportedly received services through the Early Intervention Program (EIP) initially in response to seizure activity, and then services were broadened in response to the child's lack of interaction (Parent Ex. N at p. 1). For the 2003-04 school year, the child attended kindergarten at respondent's PS 164 in District 75 (Joint Ex. B at p. 3). She was placed in a class for students with an autism spectrum disorder with six students, both verbal and

nonverbal, one teacher, and approximately six aides (Parent Ex. N at pp. 1-2). Respondent used the Picture Exchange Communication System (PECS) with petitioners' daughter (id.), and provided her with a paraprofessional in the classroom. (Parent Ex. F at p. 1). Petitioners' daughter also received a home-based ABA program for twenty hours per week, speech-language therapy, PT, and OT (Parent Ex. N at pp. 1-2; Parent Ex. F at p. 1). Petitioners requested consultation from the Lovaas Institute for Early Intervention to further develop and supervise their daughter's home-based ABA program (Parent Ex. F at p. 1).

On June 16, 2004, respondent's Committee on Special Education (CSE) recommended that the child be placed in a "special class in a special school" for the 2004-05 school year (Joint Ex. B at p. 3). Petitioners reportedly desired guidance regarding the child's school placement, the number of hours of ABA she should receive, and referrals for other schools (Parent Ex. N at p. 1) and had the child evaluated at the McCarton Center for Developmental Pediatrics (McCarton Center) on July 7 and 20, 2004 (Parent Ex. N). The evaluator at the McCarton Center reported that the child made direct eye contact and was socially interactive with coaxing and also noted that she appeared younger than her stated age, was of a small stature, and had very low tone and poor motor control (Parent Ex. N at pp. 2-3). Administration of the Stanford Binet Intelligence Scale, Fifth Edition yielded a nonverbal IQ score of 42, a verbal IQ score of 43, and a full scale IQ score of 40, which placed the child in the very low range of cognitive functioning (Parent Ex. N at p. 10). The evaluator opined that the child's IQ scores were a "fairly good" representation of her abilities (Parent Ex. N at p. 4). Petitioners' daughter received a score of 37.5 on the Childhood Autism Rating Scale (CARS), placing her in the moderately involved range for an autism spectrum disorder (id.).

On August 27, 2004, petitioners submitted a request for an impartial hearing through their attorney, challenging the appropriateness of the placement offered by the CSE for the 2004-05 school year, and requesting funding for the unilateral placement of their daughter in a home-based educational program including ABA, team meetings, supervision and parent training, speech-language therapy, OT, and PT (Joint Ex. B at p. 2). An impartial hearing officer rendered a decision on October 28, 2004, finding that respondent had failed to offer petitioners' daughter a free appropriate public education (FAPE) for the 2004-05 school year (Joint Ex. B at pp. 10-11). The impartial hearing officer further found the home-based educational program selected by petitioners appropriate and ordered respondent to fund a private, home-based, twelve-month program for the 2004-05 school year including 1:1 ABA instruction for up to 40 hours per week, supervision by an ABA consultant for two and one half hours per week, parent training for two hours per week, individual speech-language therapy five times per week for one hour, individual OT five times per week for one hour, individual PT five times per week for one hour, and transportation expenses necessary to implement the program (Joint Ex. B at pp. 14-15). Respondent did not appeal this decision.

The child is diagnosed with hypotonia, global language deficits, motor deficits, and autism (Parent Ex. N at p. 9). She exhibits significant deficits in her cognitive skills, fine and gross motor skills, receptive and expressive communication skills, and adaptive behavior skills that affect her ability to make educational gains (Joint Ex. C at p. 3).

The 2005-06 school year began on July 1, 2005 and the child's educational services related to the prior school year ended in June 2005 (see Educ. Law § 2[15]; Joint Ex. B at pp. 14-15). Petitioners requested an impartial hearing on July 19, 2005 due to the lack of an individualized education program (IEP) for their daughter at the start of the 2005-06 school year (Joint Ex. A at p. 2). The CSE created an IEP on July 21, 2005 for petitioners' daughter and deferred recommendation of a placement (Tr. p. 42; Joint Exs. C, D). The CSE recommended that the child be referred for placement in an approved non-public school setting, and that she receive individual speech-language therapy five times per week for one hour, individual OT five times per week for one hour, individual PT five times per week for one hour, and that services be provided on a twelve-month school year basis (Joint Ex. C at pp. 1, 7, 9).

Petitioners and respondent were then in agreement regarding a proposed non-public school placement, however, there was no availability in such a placement for petitioners' daughter for the 2005-06 school year (Tr. p. 42).

The impartial hearing that is the subject of this appeal convened on August 4, 2005 and concluded on December 13, 2005, after four days of hearings. At the hearing, respondent conceded prongs one and three of the Burlington/Carter test, as detailed below, acknowledging that it did not offer petitioners' daughter a FAPE for the 2005-06 school year and that there were no equitable impediments to be considered against petitioners (Tr. pp. 39-42). The impartial hearing consisted solely of petitioners' witnesses and exhibits regarding the appropriateness of the special educational services selected by petitioners. A review of the record reveals that even respondent's cross-examination of petitioners' witnesses did not involve a challenge to the appropriateness or cost of the privately obtained services, and only asked clarifying questions related to cost. The only request of petitioners to which respondent objected was their request for payment for the transportation costs of the ABA supervisor. Respondent did not argue for a reduction in petitioners' requested services at the impartial hearing.

In a decision dated December 30, 2005, the impartial hearing officer noted that respondent conceded that it did not offer the child a FAPE for the 2005-06 school year, but also concluded that respondent was not "required to offer more than a full school week worth of services, especially on a one to one basis" (IHO Decision, p. 5).[1] The impartial hearing officer noted that the child undoubtedly "could benefit from a vast array of services from morning until night, considering her very serious deficits" however, she determined that "the Department can not (sic) be responsible for providing this level of services" (id.). She held that she "[did] not believe that the Department [was] required to offer more than a full school week worth of services" and limited the program to 30 hours per week (IHO Decision, pp. 5-6).

The impartial hearing officer also found that, despite the fact that the child's July 21, 2005 IEP recommended that the child receive individual speech-language therapy five times per week for one hour and individual PT five times per week for one hour, these amounts should be reduced in light of the amount of services being offered at the time of the impartial hearing. Respondent did not advance this argument at the impartial hearing. The speech-language pathologist testified that she presently provided 45-minute sessions and the physical therapist testified that he generally saw the child four times a week (Tr. pp. 52, 105; Joint Ex. C at p. 9). The impartial hearing officer also found that the child's ABA supervisor did not spend two and one half hours per week supervising the child's program, but had instead spent between three and seven hours per visit, with visits occurring less frequently than one time per week, leading the impartial hearing officer to determine "it is inappropriate to come less frequently and make up for lost time with additional hours of consultation" (IHO Decision, p. 9; Tr. p. 86). She also determined that additional parent training was not necessary as "ABA services are provided in the child's home and the parent can observe and interact with the provider during the provision of such services" (IHO Decision, p. 9).

The impartial hearing officer denied petitioners' requested program and services in part. She granted petitioners' requests for five one-hour sessions per week of individual OT, for transportation expenses for the child and a guardian to and from the therapies, and for a twelve-month school year (IHO Decision, pp. 9-10). She reduced the requested number of hours for all other requested services, ordering respondent to pay for up to 17 hours per week of ABA services, two and one half hours per month for ABA supervisory services with no travel expenses for the supervisor, five 45-minute sessions per week of individual speech-language therapy, and four one-hour sessions per week of PT (id.).

Petitioners appeal and assert that the impartial hearing officer erred to the extent that she denied petitioners the full extent of the educational services that they requested because respondent did not refute the appropriateness of those services at the impartial hearing. Additionally, petitioners contend

that the impartial hearing officer erred in failing to order an assistive technology evaluation as agreed by the parties. On appeal, petitioners seek reimbursement for the following: 40 hours per week of one-to-one ABA services; 2.5 hours per week of ABA supervision; 2 hours per week of parent training; five 1-hour sessions per week of PT; five 1-hour sessions per week of speech-language therapy; an assistive technology evaluation; travel expense for the ABA supervisor; and provision of the program for 52 weeks per year. Respondent seeks dismissal of the petition, arguing that the impartial hearing officer conducted a legal analysis of the facts and that her decision should be upheld. Respondent asserts that petitioners' request for a 52-week school year is moot because a twelve-month school year was ordered by the impartial hearing officer. Respondent also notes that it will conduct an assistive technology evaluation and will offer parent training.

A purpose behind the Individuals with Disabilities in Education Act (IDEA) (20 U.S.C. §§ 1400 - 1482)[2] is to ensure that students with disabilities have available to them a FAPE (20 U.S.C. § 1400[d][1][A]; Schaffer v. Weast, 126 S. Ct. 528 [2005]). A FAPE includes special education and related services designed to meet the student's unique needs, provided in conformity with a comprehensive written IEP (20 U.S.C. § 1401[9][D]; 20 U.S.C. § 1414[d]).[3] A board of education may be required to reimburse parents for their expenditures for private educational services obtained for a student by his or her parent, if the services offered by the board of education were inadequate or inappropriate, the services selected by the parent were appropriate, and equitable considerations support the parent's claim (Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359 [1985]; Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 [1993]; Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 [2d Cir. 2005]).

The record clearly supports the impartial hearing officer's finding that respondent conceded that it did not offer petitioners' daughter a FAPE for the 2005-06 school year (IHO Decision, p. 4; Tr. pp. 39-40, 42, 44). I concur with the impartial hearing officer that petitioners therefore have prevailed with respect to the first Burlington/Carter criterion for an award of reimbursement for private educational services expenditures.

As to the second Burlington/Carter criterion, I do not find that the record affords a basis for the impartial hearing officer's conclusion that the private services could not exceed the number of hours in a school day,[4] and I find that the impartial hearing officer erred in her reduction of ABA services, ABA supervision, speech-language therapy, PT and parent training.

First, petitioners appeal the impartial hearing officer's reference to a "twelve-month" school year (IHO Decision, pp. 9-10). Respondent asserts that petitioners' request for a 52-week program is "moot" because the impartial hearing officer granted a twelve-month program. The record establishes that petitioners' evidence, uncontroverted by respondent, all concluded that the current services for the child were appropriate (see, e.g., Parent Exs. A, C, G, H, N at p. 8). Respondent did not dispute the appropriateness of the provision of this level of services and the record reflects that the child had been receiving services on a daily, year-round basis. To the extent that respondent views a "twelve month" program for this child to be consistent with the level of services she is currently receiving, I do not find a need to modify the impartial hearing officer's order in this regard.

Second, the parties also agreed to an assistive technology evaluation at the impartial hearing (Tr. pp. 114-15) and it therefore appears to have been overlooked by the impartial hearing officer in her decision. Respondent's Answer notes that it will provide the evaluation (Answer ¶ 60 n.2). As set forth herein, if not already provided, I will order that respondent perform this evaluation as the parties have already agreed.

Next, I concur with petitioners that, under the circumstances of the present case, the impartial hearing officer erred in reducing the amount of services to be awarded to their daughter. It is well-established that the unique needs of children with disabilities must be considered in determining the

specially designed instruction they will receive, as well as in determining the appropriate related services required to assist such children so that they benefit from special education (see generally 20 U.S.C. §§ 1401[26], [29]). Here, the impartial hearing officer ordered that services be reduced based on the length of a school day, rather than based on a determination of what level of services were appropriate to meet the child's special education needs. I am constrained to find here that the impartial hearing officer erred in determining that respondent was not obligated to provide reimbursement for services beyond the hours of a typical school day and in determining that therefore respondent did not need to provide reimbursement for more than 30 hours per week of special education services to petitioners' daughter (IHO Decision, pp. 5-7). In reaching this finding, I have also taken into consideration the fact that respondent did not contest at the impartial hearing the level of services sought by petitioners.

Respondent did not challenge petitioners' evidence at the hearing regarding their daughter's needs, the manner in which the specific services, including the specific lengths of time of the services, would meet her special education needs, and the cost of the services. The only exception is the travel reimbursement for the ABA supervisor, as discussed below. The record includes multiple reports from the ABA supervisor describing observations of the child engaged in instruction, consultations with the child's home-based education team, and recommendations for her program (Parent Exs. B, D, E, F, J, K, L, M) as well as progress reports from all of the child's related service providers (Parent Exs. A, C, G, H). Related testimony was provided by each of these professionals as well, which included the speech and language pathologist, the occupational therapist, the ABA supervisor, and the physical therapist (Tr. pp. 44-53, 61-105). The record includes a report of an evaluation conducted by a physician and a psychologist that described the child's deficits and included recommendations for addressing her needs (Parent Ex. N). The hearing testimony of the ABA supervisor and the child's related service providers, as well as the evaluation and progress reports contained in the record, were uncontroverted, and they reflect the requisite alignment between the student's needs and the services to be provided. The record supports the conclusion that the private services obtained were appropriate to meet the child's special education needs.

I also note that respondent did not call witnesses or present any evidence at the hearing challenging the appropriateness of services provided to the child, although it had the opportunity to do so (8 NYCRR 200.5[I][3][viii]). To the extent the impartial hearing officer reduced the amounts of ABA supervision, speech-language therapy and PT services based upon the present amounts being provided to the child, I am constrained to find that this was inappropriate under the circumstances of this case, where respondent did not dispute the recommended requested levels and where respondent's IEP in fact recommended the levels of speech-language therapy and PT requested by petitioners. As set forth above, the impartial hearing officer therefore erred in reducing the amounts of time for ABA services, ABA supervision, speech-language therapy and PT services.

Regarding parent training, the impartial hearing officer concluded that parent training was not necessary (see 8 NYCRR §200.13[d]). I note that respondent's answer acknowledges that respondent will offer parent training and counseling to petitioners (Answer ¶ 60), and therefore this issue appears to already be settled.

Regarding travel expenses for the ABA supervisor, I find that the impartial hearing officer properly denied this expense, which involves the supervisor's travel expenses for travel from Philadelphia to New York (Tr. pp. 111-13). Respondent objected to this expense at the impartial hearing (id.). Under all of the circumstances of the present case, the impartial hearing officer properly denied this expense. There was no indication in the record that a local service provider could not be obtained to provide this service.

Accordingly, based upon my review of the hearing record, I am constrained to conclude, under the circumstances presented herein, that petitioners have prevailed with respect to the second criterion of

are to the newly amended statute.

[3] The term "free appropriate public education" means special education and related services that--
(A) have been provided at public expense, under public supervision and direction, and without charge;
(B) meet the standards of the State educational agency;
(C) include an appropriate preschool, elementary, or secondary school education in the State involved; and,
(D) are provided in conformity with the individualized education program required under section 1414(d) of this title.
(20 U.S.C. § 1401[9]; see 20 U.S.C. § 1414[d]).

[4] It is unclear from her decision how the impartial hearing officer arrived at her estimation of the number of hours in a school day. She states: "[a]ssuming that a school day consists of six hours per day, five days per week, there are 30 hours in a school week." (IHO Decision, p. 8).

the Burlington/Carter test to the extent set forth above.

I must now address petitioners' claims that the impartial hearing officer failed to note in her decision that there were no equitable considerations in this matter and that she erred by holding against petitioners on the issue of equitable considerations by reducing the amount of services. While the impartial hearing officer did reduce the amount of services requested by petitioners, and also did not expressly acknowledge respondent's concession of equitable considerations, I agree with respondent that the impartial hearing officer did not base the reduction on equitable considerations. The impartial hearing officer based her decision to limit the amount of services on her belief, unsupported by legal authority, that respondent simply need not provide more hours of services than there are in a typical school day. The record reveals that respondent conceded that there were no equitable impediments to petitioners' claim (Tr. pp. 39-40, 42, 44). I find therefore that petitioners have prevailed with respect to the third prong of the Burlington/Carter test.

In light of these determinations, I need not address petitioners' remaining contentions.

**THE APPEAL IS SUSTAINED TO THE EXTENT INDICATED.**

**IT IS ORDERED** that, unless already conducted, or unless otherwise agreed by the parties, respondent shall have an assistive technology evaluation conducted for petitioners' daughter; and

**IT IS FURTHER ORDERED** that the impartial hearing officer's decision is hereby annulled, and modified as set forth in the following paragraph, to the extent that it granted up to 17 hours per week of ABA services; up to 2.5 hours per month of ABA supervisory services; up to five 45-minute sessions of individualized speech-language therapy; and up to four 1-hour sessions of individualized physical therapy; and

**IT IS FURTHER ORDERED** that the impartial hearing officer's decision is modified to provide for up to 40 hours per week of ABA services; up to 2.5 hours per week of ABA supervisory services; up to five 1-hour sessions of individualized speech-language therapy; up to five 1-hour sessions of individualized physical therapy; and up to 2 hours per week of parent training.


Dated:      Albany, New York
            April 27, 2006                                  _____
                                                            PAUL F. KELLY
                                                            STATE REVIEW OFFICER


[1] The impartial hearing officer, as noted by petitioners, refers to her decision as being one regarding an "interim placement." She appears to use this term because, at the time of the impartial hearing, the parties were in agreement regarding a non-public school placement, and the only problem was the lack of an available seat for petitioners' daughter. To the extent that she appeared to believe her decision would only be in effect until a seat opened up, the impartial hearing officer made reference to an "interim placement." In any event, her decision is effective for the duration of the 2005-06 school year (IHO Decision, p. 10).

[2] On December, 3, 2004, Congress amended the IDEA, and the amendments took effect on July 1, 2005 (see Individuals with Disabilities Education Improvement Act of 2004 (IDEA 2004), Pub. L. No. 108-446, 118 Stat. 2647). As the relevant events in the instant appeal took place after the effective date of the 2004 amendments, the provisions of IDEA 2004 apply and the citations contained in this decision