Staying The Course: Schools Beat Back Demands For Special-Ed Services --- Parents Face Long Odds Amid Cost Concerns;  Seeking a Home Tutor The Wall Street Journal July 24, 2007 Tuesday

1 of 1 DOCUMENT

Copyright 2007 Factiva ®, from Dow Jones
All Rights Reserved



(Copyright (c) 2007, Dow Jones & Company, Inc.)

THE WALL STREET JOURNAL.

The Wall Street Journal

July 24, 2007 Tuesday

**SECTION:** Pg. A1

**LENGTH:** 2347 words

**HEADLINE:** Staying The Course: Schools Beat Back Demands For Special-Ed Services --- Parents Face Long Odds Amid Cost Concerns;
 Seeking a Home Tutor

**BYLINE:** By Daniel Golden

**BODY:**

   EAST ISLIP, N.Y. -- Paul McGlone, an iron worker, and his wife, Tricia, became worried in 2006 that their autistic son knew fewer letters in kindergarten than he had in preschool.

   When the East Islip school district refused their request for at-home tutoring by an autism specialist, they exercised their right under federal special-education law to an administrative hearing. There, a hearing officer ordered East Islip to pay for seven hours a week of home therapy. The McGlones hired a tutor, and their son "started to click again," his mother says.

   Then the district appealed the decision to Paul F. Kelly, the New York state review officer for special-education cases. He denied any reimbursement for home services. "The child's progress was consistent with his abilities," Mr. Kelly found in February. The family canceled the tutoring.

   The McGlone case is part of a pattern that has many parents and advocates for the disabled in an uproar. They say administrative reviews in many parts of the U.S. overwhelmingly back school districts in disputes over paying for special-education services. State education departments, which have an interest in keeping down special-education costs, typically train or hire the hearing officers. Also, recent U.S. Supreme Court decisions and changes to federal law have made it harder for parents to win cases.

   Although relatively few disputes between parents and school districts reach the hearing stage, the decisions set ground rules for how much extra assistance districts must provide disabled students, who comprise 14% of all public-school students. In recent years, schools have "mainstreamed" more students with disabilities in regular classrooms, hoping to benefit the children through interaction with nondisabled peers while saving money at the same time.

   The battles reflect tension over the high cost of special education. In 1999-2000, the latest year for which figures are available, national spending on special education reached $50 billion, according to the Center for Special Education Finance, a nonprofit research group. In 2005-06, New York City's public school system alone spent $390 million on private education for disabled students considered unsuited to public school. Such tuition can cost $50,000 a year or more per pupil.

   New York's Mr. Kelly is a particular target of special-education parents' anger. A study by Pamela Steen, a Patchogue, N.Y., lawyer for parents, found that he granted full or partial relief to districts in 60 of their 70 appeals, or 86%,

Staying The Course: Schools Beat Back Demands For Special-Ed Services --- Parents Face Long Odds Amid Cost Concerns; Seeking a Home Tutor The Wall Street Journal July 24, 2007 Tuesday

in 2006 and 2007. Andrew Cuddy, an Auburn, N.Y., lawyer who represents parents, says Mr. Kelly is "being dictated to" by the state education department to save money.

Last week, about 20 lawyers for parents met to discuss possible legal action against Mr. Kelly. Advocates for the disabled have complained about him to Gov. Eliot Spitzer. John Farago, a City University of New York law professor and a New York hearing officer, says Mr. Kelly is "rewriting the rule book" to challenge precedents that enabled parents to put children in private schools at public expense.

A spokesman said Mr. Kelly declined to comment because he serves in a quasijudicial capacity. Kathy Ahearn, state education department counsel, said Mr. Kelly decides each case on "its own unique facts" and the department doesn't influence his rulings.

Under the 1975 federal law now known as the Individuals with Disabilities Education Act, parents who believe public schools fail to provide their disabled children with a "free appropriate" education may seek redress in a hearing before an independent arbiter.

In some states, lawyers or retired school administrators work part-time as hearing officers. Elsewhere, a full-time official handles special-education hearings as part of a broader caseload. In New York and Pennsylvania, initial decisions may be appealed to a second tier of administrative review. Once they exhaust these reviews, parents may pursue their case in state or federal court.

Administrative review was conceived as a faster and cheaper way of resolving special-education wrangles than going directly to court. But school districts soon considered it a financial nightmare. When they lost, they often had to pay not only private tuitions but also parents' legal bills.

In 2004, Congress amended the disabilities act to require parents to attend a mandatory "resolution session" with school officials before a hearing. It also allowed a district to recover its legal costs from parents if it wins at hearing and the complaint is deemed frivolous.

Two U.S. Supreme Court decisions also lengthened odds against parents. In 2005, the court ruled that parents seeking relief must bear the "burden of persuasion" in hearings. That means when both sides' evidence is equally compelling, the hearing officer should rule in the district's favor. Previously, in about 15 states, precedent or state law placed the burden on districts, says education professor Perry Zirkel of Lehigh University in Bethlehem, Pa.

At hearings, parents rely on expert witnesses, such as child psychologists, to offset testimony from teachers and other school staff. But the Supreme Court ruled last year that, even if parents win hearings, they can't recoup witnesses' fees -- often $100 an hour or more -- from districts.

The number of hearings nationwide dropped 31% to 4,170 in 2005-06 from 6,038 the year before. Publicly funded placements in private schools, which had climbed to 73,149 in 2004 from 52,012 in 1996, fell to 71,082 in 2005, the latest year tallied by the U.S. Department of Education.

The Supreme Court's burden-of-persuasion precedent played a role last year when Carolyn and Charles Johnson of East Islip challenged their school district, on Long Island's southern side. The district had determined that the Johnsons' son, Andrew, a lean, restless six-year-old whom his mother calls "a friendly kid with no friends," didn't qualify for special education.

Only 9.6% of the district's students were in special education in December 2005, below a statewide average of 12.3%. The average special-education student cost East Islip $21,847 in 2004-05, compared with $9,550 for general students. Guercio & Guercio, a law firm that represents East Islip, said the district "is fully committed to providing an appropriate education to all of its students" and offers services to children with disabilities even if they aren't in special education.

Six health-care professionals agreed that Andrew, who suffers from a form of autism called Asperger's Syndrome, needed help with social skills. His kindergarten teacher testified that he slapped classmates, leveled their building-block towers, grabbed puzzle pieces out of their hands, and threw pretzels and Play-Doh across the room.

The district argued that Asperger's wasn't hampering Andrew academically, and his misbehavior wasn't unusual for kindergarten. Hearing officer Harry Kershen, a retired school administrator, came down on East Islip's side, citing the Supreme Court decision. Andrew has "certain quirks," but "his behavior wasn't all that off the wall," Mr. Kershen says.

Staying The Course: Schools Beat Back Demands For Special-Ed Services --- Parents Face Long Odds Amid Cost Concerns; Seeking a Home Tutor The Wall Street Journal July 24, 2007 Tuesday

Mr. Kelly, the New York state reviewer, upheld the ruling, leaving Andrew in a regular classroom without the aide the Johnsons sought. Mr. Kelly wrote that the record showed Andrew has "excellent work habits." The Johnsons appealed to federal district court in Central Islip, N.Y., in May.

Mr. Johnson, himself a middle-school principal in the Bronx, believes the district was ignoring his son's social needs. "Kids don't kill themselves because they can't pass algebra," he recalls telling district officials. "They kill themselves because they don't have friends."

New York State Assemblywoman Catherine Nolan says the Supreme Court's ruling has had a "chilling effect." A bill she filed to return the burden of persuasion to districts has passed the New York legislature but hasn't been sent to the governor yet. She believes the court meant its ruling to apply only to states that don't have their own laws on the matter.

Many districts are also limiting outside experts' access to classrooms. In California, a psychologist hired by parents of an autistic boy requested 90 minutes to observe an elementary-school program where the Capistrano school district wanted to place the child. After the district gave the psychologist 20 minutes, the parents sought a hearing. This past March, a federal court in Los Angeles reversed a hearing officer's ruling and ordered the district to reimburse the family for privately funded educational expenses.

In Reading, Mass., experts may observe for only 45 to 60 minutes, accompanied by school personnel. They must submit a resume and references to the district, and hand over copies of notes. "A lot of these evaluators are hired guns," says former Reading special-education director Stephen Gannon, who developed its policy.

The federal government doesn't track the outcomes of administrative hearings. But in most states that keep count, districts usually win. In New Jersey, districts prevailed in 27 of 28 hearings in 2005-06. In California, parents only won 11 of 119 hearings in that year. Districts prevailed in 77 cases, while the rest had mixed outcomes.

One Florida hearing officer was accused of reading during testimony for the parents. "Like some teenage girl reading a Harlequin romance novel during homeroom," the officer "attempted to hide the book behind a report cover," the parents' lawyer in the case wrote in a motion. The officer denied the allegation but recused herself from the case. She decided at least 25 special-education cases before retiring last fall, always in favor of the district.

School-board lawyers say they're winning because special-education services have improved. "Ten or more years ago, school districts frequently did not have adequate programs," says Charles Weatherly, whose Atlanta firm represents districts in several states and has also trained hearing officers. "Now that they have discovered the expense of litigation and of funding private placements, they're putting more money into programming."

Some parents and advocates for the disabled dispute that explanation. Former Pennsylvania hearing officer Linda Stengle, whose contract was not renewed last year, contends in a pending federal lawsuit against the state that its Office for Dispute Resolution "instructed hearing officers to selectively apply federal and state guidelines so that they always benefited school districts over parents." The office denies the allegations.

After hearing reviewers in Pennsylvania were accused of bias, the state overhauled its system for choosing them. Until recently, Pennsylvania had four appeals panels, each with a fixed roster of three administrative judges, to review initial rulings. In a federal lawsuit filed in 2005, lawyer Dennis McAndrews accused one of the four panels of bias, saying it decided 45 of 47 appeals for districts between August 2003 and August 2005.

Prof. Zirkel, the education professor at Lehigh University, was a member of that panel. He wrote most of its decisions, including one limiting the special-education services Mr. McAndrews's client could demand. Prof. Zirkel says his record over a longer period was less lopsided.

In May, the U.S. District Court in Philadelphia sided with Mr. McAndrews, ordering the state to take another look at the case. Around that time, the state dissolved the four panels. Now, a computer randomly assigns three judges to each case and picks which one will write the decision.

In New York, parents prevailed in 54% of issues adjudicated at hearings in 2005-06, according to state data. But the picture changes when either side appeals to Mr. Kelly. After a stint at Syracuse University teaching disability law and helping students represent the indigent, he became the state review officer in January 2003. While granting districts most of their appeals in 2006-07, he sided in full or part with parents filing appeals only 27% of the time, according to Ms. Steen, the lawyer who has studied his record.

Staying The Course: Schools Beat Back Demands For Special-Ed Services --- Parents Face Long Odds Amid Cost Concerns; Seeking a Home Tutor The Wall Street Journal July 24, 2007 Tuesday

When lawyers working for Mr. Kelly prepared decisions in favor of parents, he often overruled them, according to two former staff members.

New York created Mr. Kelly's office in 1990 after a federal court ruled it was a conflict of interest for the state education commissioner to judge appeals. The state reimburses districts for some special-education costs. Although the state education department employs Mr. Kelly, he is required to act independently of it.

Mr. Cuddy and other parents' attorneys say Mr. Kelly's independence is compromised by his relationship with Kathleen Surgalla, an assistant counsel for the state education department. Ms. Surgalla has trained the part-time officers who conduct the initial hearings and handled other special-education matters. Mr. Kelly and Ms. Surgalla live together in an Albany suburb, voter-registration records show.

Mr. Kelly and Ms. Surgalla declined to comment through a department spokesman. Ms. Ahearn said department employees have an "obligation to keep business separate from personal. . . . I feel comfortable and certain that there's no inappropriate conversation or influence going on."

After Mr. Kelly denied home-based autism therapy to the McGlones' son, they considered moving out of East Islip. Then the district's new special-education director promised them therapy at home this summer and a one-on-one aide in the school year beginning this fall. So far, the therapy is going well, says Ms. McGlone. In the first two weeks, her son has mastered four more letters of the alphabet, compared with seven in the just-concluded school year, she says.

"He has the ability to learn to read, and that could change his whole world," she says.

(See related letters: "Letters to the Editor: For Parents of Children with Special Needs, Public School Offers No Relief" -- WSJ July 31, 2007)



License this article from Dow Jones Reprint Service

**NOTES:**
PUBLISHER: Dow Jones & Company, Inc.

**LOAD-DATE:** July 31, 2007